[No. 14739. Department One. October 15, 1918.]

UNION TRUST COMPANY, *Appellant*, v. L. H. MOORE,
*as State Bank Examiner, et al., Respondents.*[1]

CORPORATIONS (23)—CORPORATE NAME — RIGHT TO USE—"TRUST"
COMPANY—STATUTES—CONSTRUCTION. A corporation the articles of
which authorized it to engage in a trust business, cannot lawfully
use the word "trust" in its corporate name, although it does not
actually engage in a trust business, without complying with Laws
1917, ch. 80, p. 271, which defines what constitutes a banking or
trust business, provides for the incorporation of banks and trust
companies and for their supervision, imposes penalties not appli-
cable to other corporations, and provides that no corporation shall
engage in a trust business except as authorized by the act and
that no corporation shall use the word "trust" in its corporate
name except a corporation authorized by the laws of the state;
since the act was intended to put banks and trust companies in
a distinct class with limited powers and new safeguards.

SAME (23). The words "Trust Company" in such act are not
ambiguous, and the phrase "authorized by laws of the state," was
merely intended to differentiate between trust companies organized
under the act and foreign trust companies authorized by the act
to engage in a trust business, and not to authorize existing com-
panies to continue the use of the trust name, if not engaged in
a trust business without complying with the law.

CONSTITUTIONAL LAW (126)—DUE PROCESS—DEPRIVATION OF PROP-
ERTY—CORPORATE NAME. Laws 1917, p. 271, prohibiting the use of
the word "trust" in the corporate name of a company not incor-
porated as a trust company, is not a taking of property without
due process, as to existing corporations, in view of Const., art. 12,
§ 1, which provides that laws relating to corporations may be
altered, amended or repealed at any time, and that corporations
doing business in the state may be regulated, limited or restrained
by law.

Appeal from a judgment of the superior court for
Thurston county, Wright, J., entered December 8,
1917, in favor of the defendants, dismissing an action
for an injunction, after a trial on the merits before the
court. Affirmed.

[1]Reported in 175 Pac. 565.

*Turner & Hartge,* for appellant, contended, *inter alia,* that an unreasonable or oppressive interpretation of a statute or one operating to create injustice, should be avoided if possible. 36 Cyc. 1111, 1112; Endlich, Interpretation of Statutes (Ed. 1888), § 245 *et seq.*; Sutherland, Statutory Construction (Ed. 1891), §§ 321, 322; *Dennis v. Moses,* 18 Wash. 537, 52 Pac. 333; *State ex rel. Chamberlain v. Daniel,* 17 Wash. 111, 40 Pac. 302, 49 Pac. 243.

Where a retroactive construction would cause injustice it should be avoided if possible. Endlich, Interpretation of Statutes (Ed. 1888), § 271; *Hale v. Stenger,* 22 Wash. 516, 61 Pac. 156.

The reservation of the right to repeal and amend corporation laws does not include the right to amend and repeal charters granted under those laws prior to such repeal or amendment. *Lord v. Equitable Life Assur. Soc. of United States,* 47 Misc. Rep. 187, 94 N. Y. Supp. 65; *People v. O'Brien,* 111 N. Y. 1, 18 N. E. 692, 7 Am. St. 684, 2 L. R. A. 255, 262, 263.

In the absence of a specific provision making such an intention clear the repeal or amendment of a general incorporation law does not repeal or amend the charter. Opinion Attorney General, 1911-1912, p. 257, and cases there cited; 1 Thompson, Corporations, p. 351; 2 Clark and Marshall, Private Corporations, p. 835; 1 Clark and Marshall, Private Corporations, pp. 715-717; 2 Cook, Corporations, p. 1038; *Donworth & Behan v. Coolbaugh,* 5 Clarke (5 Iowa) 300; *City of Lansing v. Michigan Power Co.,* 183 Mich. 400, 150 N. W. 250; *New York & N. E. R. Co. v. Town of Bristol,* 151 U. S. 556.

The name of a corporation is a vital essential of its charter, and a change of its name is in effect a creation of a new corporation. *State ex rel. Osborne, Tremper & Co. v. Nichols,* 38 Wash. 309, 80 Pac. 462.

*The Attorney General,* and *Glenn J. Fairbrook, Assistant,* for respondents, cited: *Buffalo & N. Y. City R. Co. v. Dudley,* 14 N. Y. 336; *New York & N. E. R. Co. v. Town of Bristol,* 151 U. S. 556; *St. John v. Iowa Business Men's Building & Loan Ass'n,* 136 Iowa 448, 113 N. W. 863, 15 L. R. A. (N. S.) 503; *Berea College v. Commonwealth of Kentucky,* 211 U. S. 45; *McKee v. Chautauqua Assembly,* 124 Fed. 808.

FULLERTON, J.—The appellant, Union Trust Company, was organized as a corporation under the laws of this state in the year 1892, with its principal place of business in the city of Seattle. Its articles of incorporation authorize it to engage in a variety of businesses, including, among others, the trust business and the business of buying, selling, leasing and otherwise dealing in real estate. Up to the time of the commencement of this action, its business has been confined to dealing in real estate; at no time has it sought to exercise its powers as a trust company. In its chosen line, however, its business has been and is extensive, and its corporate rights, name and good will are valuable. In 1917, the legislature passed an act relating to banks and trust companies. Laws 1917, ch. 80, p. 271. To an understanding of the question here presented, it is not necessary to set forth the act in detail. Generally, it may be said that it defined the terms "bank," "trust business," and "trust company," provided for the incorporation of banks and trust companies, and prescribed and limited the business in which such companies might engage. In § 24 (p. 281) the powers of a trust company are specified. In § 14 (p. 275) it is provided:

"The term 'trust business' shall include the business of doing any or all of the things specified in subdi-

visions 2, 3, 4, 5, 6, 7, 8, 9, 10 and 11 of section 24 of this act.

"The term 'trust company,' where used in this act, unless a different meaning appears from the context, means any corporation, organized under the laws of this state, engaged in trust business."

Section 15 (p. 276) of the act provides:

"No person shall engage in banking except in compliance with and subject to the provisions of this act, except it be a national bank or except in so far as it may be authorized so to do by the laws of this state relating to mutual savings banks, nor shall any corporation engage in a trust business except in compliance with and subject to the provisions of this act, nor shall any bank engage in a trust business, except as herein authorized, nor shall any bank or trust company establish any branch: Provided however, That any bank or trust company may participate in membership in the federal reserve banking system of the United States and may to that end comply with any requirements or laws of the United States or any rules or regulations duly promulgated pursuant thereto, anything elsewhere in this act to the contrary notwithstanding."

Section 18 (p. 277) provides:

"The name of every bank shall contain the word 'bank,' and the name of every trust company shall contain the word 'trust.' No person except:

"(1) A national bank;

"(2) A bank or trust company authorized by the laws of this state;

"(3) A foreign corporation authorized by this act so to do, shall,

"1. Use as a part of his or its name or other business designation or in any manner as if connected with his or its business or place of business any of the following words or the plural thereof, to wit: 'bank,' 'banking,' 'banker,' 'trust.'

"2. Use any sign at or about his or its place of business or use or circulate any advertisement, letterhead, billhead, note, receipt, certificate, blank, form, or

any written or printed or part written and part printed paper, instrument or article whatsoever, directly or indirectly indicating that the business of such person is that of a bank or trust company.

"Every person who, and every director and officer of every corporation which, to the knowledge of such director or officer violates any provision of this section shall be guilty of a gross misdemeanor."

Section 37 (p. 291) provides:

"A bank or trust company may purchase, hold and convey real estate for the following purposes and no other: '

"(1)   Such as shall be necessary for the convenient transaction of its business, including with its banking offices other apartments in the same building to rent as a source of income: Provided, That as to any corporation hereafter organized not to exceed thirty per cent of its capital and surplus and undivided profits may be so invested: And provided further, Any bank or trust company heretofore organized shall not hereafter invest in the aggregate to exceed thirty per cent of its capital, surplus and undivided profits in a bank building without the approval of the state bank examiner.

"(2)   Such as shall be purchased or conveyed to it in satisfaction, or on account of, debts previously contracted in the course of its business.

"(3)   Such as it shall purchase at sale under judgments, decrees, liens or mortgage foreclosures, against securities held by it.

"(4)   Such as a trust company receives in trust or acquires pursuant to the terms or authority of any trust.

"No real estate specified in subdivision four shall be considered an asset of the corporation holding the same in trust nor shall any real estate except that specified in subdivision one be carried as an asset on the corporation's books for a longer period than five years from the date title is acquired thereto, unless an extension of time be granted by the state bank examiner."

Section 78 (p. 306) provides:

"Every corporation, which at the time this law becomes operative, is actually and publicly engaged in banking or trust business in this state in full compliance with the laws hereof, which were in force immediately prior to the time when this law becomes operative, may, if it otherwise complies with the provisions of this act, continue its said business, subject to the terms and regulations hereof and without amending its articles of incorporation, although its name and the amount of its capital stock, the number or length of terms of its directors or the form of its articles of incorporation do not comply with the requirements of this act: Provided:

"(1)   That any such bank, which was by the state bank examiner lawfully permitted to operate, although its capital stock was not fully paid in, shall pay in the balance of its capital stock at such times and in such amounts as said examiner may require.

"(2)   That any bank or trust company which shall amend its articles of incorporation must in such event comply with all the requirements of this act.

"(3)   That the directors of trust companies at the time this act becomes operative may continue to hold such office for the terms for which elected, but the terms of all directors hereafter elected shall be governed by this act."

Section 79 (p. 307) provides:

"Any corporation existing at the time this act becomes operative, the name of which contains any word, the use of which by such corporation is prohibited by this act, may nevertheless continue the use of such name for a period of time not exceeding ninety days from the time this act becomes operative. Any such corporation may file supplemental articles of incorporation within such period changing its corporate name to comply with the requirements of this act without the payment of any filing fee for so doing but such supplemental articles shall contain no other amendment."

The act further provides for the appointment of a state bank examiner, conferring on him visitorial and inquisitorial powers with reference to banks and trust companies, and generally makes it his duty to see that such companies comply with the provisions of the act. It also provides for periodical reports from banks and trust companies to the examiner, showing their re-sources and liabilities in such form as the examiner shall prescribe, and authorizes him to take possession of such companies as are insolvent or fail to comply with the provisions of the act, wind up their affairs, and distribute their assets.

The present action was begun by the appellant in September, 1917, against the then bank examiner and the *Attorney General* to restrain them from enforcing as against it the provisions of the act. In its com-plaint the appellant set forth that a dispute had arisen between it and the bank examiner touching the mean-ing and proper construction of the act before men-tioned; that the bank examiner contended that the ap-pellant was operating in violation of the act, had threatened to prosecute its officers criminally, and had threatened to and would, with the aid of the *Attorney General,* take possession of its business and assets, wind up its affairs, and dissolve it as a corporation. It further alleged, and its proofs tended to show, that it had, by an honorable course of dealing, built up an extensive and valuable business; that its name and good will were valuable; all of which would be de-stroyed by the acts of the officers named, if not re-strained by the court. It also alleged, and tendered proofs to the effect, that it intended at some future time to engage in the trust business, as its articles of incorporation authorized it to do, and that it had there-tofore entered into negotiations looking to the sale of

its stock and franchise to persons contemplating engaging in the trust business. The trial court, at the conclusion of the trial, held that the appellant had failed to prove a cause of action, and entered a judgment of dismissal. This appeal followed.

The appellant first contends that the statute upon which the respondents rely as their authority for visiting upon it the penalty which it seeks to enjoin is not applicable to its situation. The contention in effect is that, since the appellant's articles of incorporation authorize it to engage in a trust business, it is, in law and in fact, a trust company and may lawfully use the word "trust" in its corporate name, notwithstanding it has and exercises powers not pertaining to the trust business and does not actually engage in such business; and that, since it does not actually engage in a trust business, it is not subject to visitation by the bank examiner, or compelled to make reports to that officer, or otherwise comply with the requirements of the banking and trust company act.

In support of the first branch of the contention, it is argued that the provisions of § 18 of the act, defining what character of corporation may use the word "trust" in its corporate name, are not limited by the definition of the term "trust company" as a corporation engaged in the trust business; but the term is used in its broader and more usual signification of a corporation having the powers of a trust company whether it is engaged in a trust business or not, and, so construing it, there is nothing in the section which prohibits the appellant from using the word "trust" in its corporate name. In further support of the same contention, attention is called to the somewhat peculiar wording of subdivision 2 of the section cited, and it is argued therefrom that the use of the phrase "author-

ized by the laws of this state'' evidences an intent on
the part of the legislature to permit any corporation
having trust powers to use the word ''trust'' in its
corporate name. The rule which requires ambiguous
words of a statute to be given that meaning which
will best protect the innocent and not work an injury
to, or the forfeiture of, property is also invoked; the
conclusion drawn being that, if the words of the stat-
ute do not clearly indicate the meaning the appellant
puts upon them, they are ambiguous and will be given
the meaning contended for in order that valuable
property rights which the appellant has lawfully ac-
quired may not be destroyed.

But, however plausible this reasoning may seem, we
cannot think it correctly reflects the purpose of the
legislature. The act in question, and other recent acts
which it supersedes, make it clear, we think, that the
legislature, in their enactment, had in mind a definite
purpose. That purpose was to segregate the business
of banking and the trust business from other busi-
nesses in which corporations might engage, provide for
the organization of corporations whose businesses
should be confined to these businesses alone, and sub-
ject them to supervision and penalties not imposed on
corporations engaged in business of a more general
nature, not capable by incompetence, mismanagement
or fraud, of causing the harm to the general public that
incompetence, mismanagement and fraud in this par-
ticular class of corporations cause. We have cited
and quoted sufficiently from the provisions of the act,
we think, to make this conclusion plain. There is a
definition of the things which shall constitute a bank-
ing or a trust business, a provision for the incorpora-
tion of companies which shall engage in the business
alone, supervision by a public officer over such corpo-

rations is provided, and penalties imposed upon the stockholders in such corporations not imposed upon stockholders of other corporations. Further than this, it is provided that no corporation shall engage in the trust business except as authorized by the act, that no corporation shall use the word "trust" in its corporate name except a corporation authorized by the laws of the state; that such a corporation shall not purchase, hold, or convey real estate except for limited purposes; and finally, that no corporation existing at the time the act becomes operative, the name of which contains any word prohibited by the act, may continue its business for a period longer than ninety days, permitting such corporations to file supplemental articles of incorporation without fees, changing its name so as to omit the prohibited words. These provisions would be meaningless, it seems to us, were it not intended to put banks and trust companies into a distinct class, confine them to a banking and trust business, and confer upon them a distinctive title, so that any person dealing with them might know from such title that they were corporations with limited powers and subject to the state's supervisory control.

We cannot agree with the appellant in its contention that the term "trust company," as used in § 18 of the act, has a broader meaning than is accorded to the term in the definition found in § 14. It is true that the term is followed by the phrase "authorized by the laws of this state," but a reading of other provisions of the act, particularly the subdivision following the subdivision from which the phrase is taken, convinces us that the legislature intended by the phrase merely to differentiate between corporations organized under the laws of this state to engage in a trust business and corporations organized in a for-

eign jurisdiction which the act authorizes to engage in the business. Nor do we find the meaning of the section ambiguous, rendering applicable the rule of construction governing statutes of ambiguous wording. If the purpose of the legislature is, as we conclude it to be, to define what shall constitute a trust business, provide for the incorporation of companies whose sole business shall be confined to a trust business, subject them to the state's supervisory control, give them a distinctive name, and prohibit corporations engaged in any other business, whether authorized to do a trust business or not, from using the distinctive name, the subdivision of § 18 called in question is in harmony with that view if construed in accordance with the definition in § 14. On the other hand, it seems to us that it would render the particular section, as well as the whole act, ambiguous to construe it in accordance with the appellant's contention.

The appellant further contends that, if the statute is to be given the meaning we have put upon it, it is void and unenforcible as violative of both the state and Federal constitutions. But to this we cannot accede. Section 1, art. 12, of the state constitution reads as follows:

"Corporations may be formed under general laws, but shall not be created by special acts. All laws relating to corporations may be altered, amended, or repealed by the legislature at any time, and all corporations doing business in this state may, as to such business, be regulated, limited, or restrained by law."

The appellant was organized under the general incorporation laws enacted pursuant to this provision of the constitution, and is, of course, subject to the restrictions therein imposed. While it may be that the state cannot grant rights unconditionally and after-

wards place restrictions on the granted rights to the injury of one taking under them, there is no doubt that it may prescribe and enforce any right which it has reserved to itself, regardless of such injuries. Here the rights reserved are to regulate, limit and restrain. Under them the legislature may do all that it has attempted to do in the act before us. The act is not, therefore, in our opinion, violative of the state constitution.

Nor do we think the act violative of the Federal constitution. The contention under this head is that it is a taking of the appellant's property without due process of law. But since the state, in the law providing for the appellant's incorporation, reserved the right to alter, amend or repeal such law, and since it reserved the right to regulate, limit and restrain the business the corporation might do under the law, it is in no sense a taking of its property without due process of law to put in force such reserved rights.

The judgment is affirmed.

MAIN, C. J., PARKER, TOLMAN, and MITCHELL, JJ., concur.